UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

N⁰ 08-CV-967 (JFB) (WDW)
_____

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.,

Plaintiff,

VERSUS

JAMES M. LIGUORI, M.D., P.C., AND JAMES M. LIGUORI, M.D.,

Defendants.

_____

MEMORANDUM AND ORDER
December 12, 2008
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff State Farm Mutual Automobile (hereinafter, "State Farm" or "plaintiff") brought this action against James M. Liguori, M.D., P.C., (hereinafter, "JMLPC") and James M. Liguori, M.D. (hereinafter "Dr. Liguori") (collectively, "defendants"), related to alleged fraudulent claims for payment under New York State's No-Fault Insurance Laws (N.Y. Ins. Law § 5106). Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and pursuant to Federal Rules of Civil Procedure 8(a) and 9(b) for insufficiently pleading its claims. As set forth below, the motion to dismiss is denied.

The critical legal issue raised by defendants' motion is whether New York State's 30-day statutory no-fault rule ("the 30-Day Rule") also precludes affirmative lawsuits brought by an insurer outside the no-fault statutory framework to recover for fraud or unjust enrichment against a medical provider in connection with the alleged submission of fraudulent claims. Specifically, the 30-Day Rule, as reflected in N.Y. Ins. Law § 5106(a), compels an insurer to either pay or deny no-fault claims within 30 days of their receipt and requires defenses (other than "no coverage defenses" or "fraudulent corporate formation" defenses), including defenses related to billing fraud based upon lack of medical necessity or excessive fees, to be asserted in the denial within the requisite 30-day time frame, or such defenses are waived. In the instant lawsuit, State Farm seeks to recover more than $1 million that it alleges was wrongfully obtained by the defendants' medical practice

from State Farm through a massive fraudulent billing scheme involving the submission of hundreds of bills for neurological consultations and electro-diagnostic tests purportedly provided to individual patients eligible for insurance coverage under State Farm's insurance policies. According to the complaint, these consultations and tests were ordered and performed over a number of years on numerous patients in an assembly-like manner based upon a fraudulent, pre-determined protocol designed by defendants with the sole objective to maximize charges that could be submitted to State Farm.

Defendants argue that this lawsuit is untimely under New York no-fault law and must be dismissed because any such allegations, defenses, or causes of action for fraud must be raised within 30 days of receipt of the no-fault claim. Although numerous decisions in this Circuit have repeatedly rejected the contention made by defendants here and concluded that affirmative lawsuits for fraud are not barred by the 30-Day Rule, defendants assert in sweeping terms that the federal courts have completely abrogated their legal obligation to adhere to decisions of the highest court in New York State regarding interpretations of New York law. (*See* Defendants' Memorandum of Law in Reply, at 8) ("Nothing in New York law supports any of these federal court decisions, and with each new decision feeding on the previous ones, federal law moves further and further from the New York law these courts are Constitutionally mandated to apply."). In particular, defendants argue that the recent New York State Court of Appeals decision in *Fair Price Med. Supply Corp. v. Travelers Indem. Co.*, 10 N.Y.3d 556, 860 N.Y.S.2d 471 (2008) is dispositive as to State Farm's fraud claim in the instant case and requires dismissal of the claim because State Farm did not raise these fraud allegations within the requisite 30-day time period under New York's no-fault law.

As discussed in detail below, this Court agrees with the thorough and well-reasoned analyses in the prior federal cases addressing this precise issue and concludes that State Farm's fraud claim is not barred under New York law by the 30-Day Rule. Although defendants argue that such a conclusion has no basis in New York statutory or case law, especially in the wake of *Fair Price*, this Court disagrees. First, defendants' broad interpretation of *Fair Price* is entirely misplaced. *Fair Price* did not involve an attempt by an insurer to bring a separate lawsuit for fraud, but rather concerned whether a particular defense asserted by an insurer – namely, billed-for-services that were never rendered – could be considered a "no coverage" defense such that it could be raised as a defense even though the claim had not been denied within the requisite 30-day period. The Court of Appeals held that such a defense was not a lack of coverage defense and, thus, had to be raised in a timely denial within 30 days of receipt of a claim or it was waived as a defense. However, there is no language in the *Fair Price* decision suggesting that the insurer would also be precluded from asserting a separate lawsuit for fraud or unjust enrichment against a medical provider that arose from alleged fraudulent conduct by doctors related to that claim. In fact, to the contrary, the Appellate Term decision in *Fair Price* (which was affirmed by the Appellate Division and Court of Appeals) explicitly stated that, although the 30-Day Rule barred assertion of billing fraud as a defense, the insurer "is not without remedy; after paying such a claim, the insurer, for example, may

have an action to recover benefits paid under a theory of fraud or unjust enrichment." *Fair Price Med. Supply Corp. v. Travelers Indem. Company*, 803 N.Y.S.2d 337, 340 (N.Y. App. Term 2005). This language, which neither the Appellate Division nor Court of Appeals took issue with in affirming the decision, clearly rejects the position asserted by defendants in this lawsuit. Second, the Department of Insurance issued an opinion in 2000 which explicitly rejected the position advanced by defendants here and, instead, concluded that the 30-Day Rule "is in no way intended and should not serve as a bar to subsequent actions by an insurer for the recovery of fraudulently obtained benefits from a claimant, where such action is authorized under the auspices of any statute or under common law." *Legal Opinion of State of New York, Insurance Department*, dated November 29, 2000, at 2. Although this informal opinion is not entitled to the same weight given under New York law to the Superintendent of Insurance when issuing regulations on interpretations of insurance law, this Court finds it to be an instructive predictor on how the Court of Appeals would resolve this issue, especially in light of the statutory language of Section 5106, the above-referenced Appellate Term's statement in *Fair Price*, and the reasons given by the Department of Insurance for its interpretation. To hold otherwise would leave insurers, if they are unable to discover a fraud by a medical provider within 30 days of receipt of a claim (no matter how massive and well-concealed), with no civil remedy under New York law. Although Section 5106(a) leaves them with no remedy under such circumstances in the no-fault statutory framework which places a premium on prompt payment to the claimant, nothing in the statutory language of New York's no-fault laws or its court decisions suggests that New York law takes the drastic position of leaving the insurer, after 30 days, with no civil remedy whatsoever against the medical provider for fraud. Finally, defendants have cited no case authority in New York which has precluded an affirmative lawsuit or cause of action for fraud by an insurer because of the 30-Day Rule. In fact, the only two New York lower court cases that have addressed this issue have held to the contrary and concluded that such affirmative lawsuits can be brought. *See, e.g., Carnegie Hill Orthopedic Servs. P.C. v. Geico Ins. Co.*, 19 Misc. 3d 1111A, 862 N.Y.S.2d 813 (Sup. Ct. Nassau County 2008); *Progressive Northeastern Ins. Co. v. Advanced Diagnostic and Treatment Med. P.C.*, 229 N.Y.L.J. 18 col. 2 (Sup. Ct. N.Y. County Aug. 2, 2001).

In short, although the New York Court of Appeals has yet to decide this precise issue, defendants' position – namely, that New York's 30-Day Rule precludes an affirmative cause of action for fraud by an insurer against a medical provider – is not contained in the language of any of the statutory provisions under New York Insurance Law (including Section 5106) and is inconsistent with the affirmed lower court decision in *Fair Price*, the interpretation of Section 5106 by the Department of Insurance, and the decisions by the only two New York courts that have directly addressed this issue. Thus, this Court, adhering to its obligation as a federal court sitting in diversity to look to the statutes and decisional law of the forum state, declines to adopt defendants' position and denies the motion to dismiss based upon New York's 30-Day Rule.[1]

---

[1] The Court also concludes that the other grounds raised by defendants in their motion to dismiss are without merit for the reasons set forth herein.

# I. Background

## A. Facts

The following facts are taken from the complaint (hereinafter, "Compl.") and are not findings of fact by the Court. The Court assumes these facts to be true for the purpose of deciding this motion and construes them in the light most favorable to plaintiff, the non-moving party.

State Farm is a company that underwrites automobile insurance in the State of New York. (Compl. ¶ 9.) According to the complaint, Dr. Liguori is a doctor of osteopathic medicine and the sole shareholder, director and officer of JMLPC. (Compl. ¶ 14.) The majority of patients Dr. Liguori treats are individuals who claim to have suffered injuries as a result of a motor vehicle accident and are seeking coverage for medical treatment under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law § 1501, et seq.) and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. § 65, et seq.) (collectively, "No-Fault Insurance Laws"). (Compl. ¶ 15.) Plaintiff alleges that defendants ordered and performed hundreds of neurological consultations and diagnostic tests that were not medically necessary for individuals who were involved in automobile accidents and were eligible for insurance coverage under State Farm's insurance policies. (Compl. ¶ 1.)

According to the complaint, Dr. Liguori's patients are referred to him by other medical providers for consultation. Dr. Liguori then performs the consultation and diagnoses "virtually every Insured with the same condition, including cervical (upper back) and lumbar (lower back) muscle sprain and . . . concludes that they need [diagnostic tests] to rule out cervical and/or lumbar radiculopathy (i.e., pinched nerve roots along the spine)." (Compl. ¶¶ 16 - 18.) Dr. Liguori then allegedly performs and interprets diagnostic tests for virtually every insured, "namely electromyography tests ("EMGs"), nerve conduction velocities ("NCVs"), as well as somatosensory evoked potentials ("SSEPs") and Brainstem Auditory Evoked Potentials ("BAERs")." (Compl. ¶ 19.) Additional studies are performed in some cases. (Compl. ¶ 21.)

The complaint alleges that these charges are fraudulent because "(a) the Consultations and Tests are not medically necessary, (b) the results of the Consultations are pre-determined to conclude that the Tests are medically necessary, (c) the nature and number of Tests that are performed on virtually every Insured are the same and are not tailored to the unique circumstances of any Insured, (d) the nature and number of Tests that are performed are designed solely to maximize the profits, rather than to benefit the diagnosis or treatment of any Insured, (e) the billing codes used to collect No-Fault Benefits from insurers misrepresent and exaggerate the level of service provided in his Consultations to inflate the charges, and (f) the billing codes to collect No-Fault Benefits from insurers for one of the Tests - electromyography tests - are often are [sic] unbundled to inflate the charges." (Compl. ¶ 21.) Plaintiff alleges that defendants' fraudulent "scheme began as early as 1999 and has continued uninterrupted since that time," resulting in damages to plaintiff of over $1,000,000. (Compl. ¶ 3.)

State Farm alleges that defendants attested to the medical necessity of the consultations and tests. State Farm further

4

alleges that it was under statutory and contractual obligations to promptly and fairly process claims within 30 days, and therefore relied on these attestations and the facially valid documents defendants submitted is support of the charges. (Compl. ¶¶ 50-52.) The complaint alleges that "[b]ased upon the defendants' material misrepresentations and other affirmative acts to conceal their fraud from State Farm, State Farm did not discover and should not have reasonably discovered that its damages were attributable to fraud until shortly before it filed this complaint." (Compl. ¶ 53.)

B. Procedural History

Plaintiff brought this diversity action on March 7, 2008, alleging fraud and unjust enrichment and seeking a declaratory judgment that JMLPC is not entitled to coverage for any of the above-described charges. On August 22, 2008, defendants filed a motion to dismiss the complaint. Plaintiff filed a response on September 24, 2008 and defendants filed a reply on October 6, 2008. Oral argument was held on November 24, 2008.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1969, 167 L. Ed. 2d 929 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

However, claims concerning fraud are subject to heightened pleading standards pursuant to Fed. R. Civ. P. 9(b). Specifically, Federal Rule of Civil Procedure 9(b) requires the following:

> In allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b). Thus, fraud allegations in a complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bankcorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *accord Knoll v. Schectman,* No. 06-cv-1832, 2008 WL 1868440, at *1 (2d Cir. Apr. 25, 2008); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). Conclusory allegations of fraud will be dismissed under Rule 9(b). *See Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971). Moreover, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the

fraud." *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

### III. DISCUSSION

In exercising its diversity jurisdiction, the Court must "apply the substantive law of the state to which the forum state, New York, would have turned had the suit been filed in state court." *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 280 (2d Cir. 1981) (citations omitted); *see also Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008) (noting that a district court sitting in diversity applies the choice of law rules of the forum in which it sits). New York applies different choice-of-law tests for different types of claims. In contract cases, New York courts apply "the 'center of gravity' or 'grouping of contacts' choice of law theory." *Allstate Ins. Co. v. Stolarz*, 81 N.Y.2d 219, 226, 597 N.Y.S.2d 904 (1993). For tort claims, New York applies an interest analysis, which is a "flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 337 (2d Cir. 2005) (citing *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 595 N.Y.S.2d 919, 922 (1993)). It is undisputed that New York has the strongest interest and greatest number of contacts in this matter. Because Dr. Liguori is a physician who has been licensed to practice medicine in New York and who resides in and is a citizen of the State of New York, and JMLPC was incorporated in New York, and State Farm is authorized to conduct business and to issue policies of automobile insurance in the State of New York, out of which the current action arises, New York law applies.

In addition, it is well-settled that "'[w]here the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity.'" *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 199 (2d Cir. 2003) (quoting *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994)). Moreover, "[i]n doing so, we must give 'fullest weight' to the decisions of a state's highest court, and we must give 'proper regard' to the decisions of a state's lower courts." *Phansalkar*, 344 F.3d at 199 (quoting *Travelers Ins. Co.*, 14 F.3d at 119). Among the resources available are "the statutory language, pertinent legislative history, the statutory scheme set in historical context, how the statute can be woven into the state law with the least distortion of the total fabric, state decisional law, federal cases which construe the state statute, scholarly works and any other reliable data tending to indicate how the New York Court of Appeals would resolve the [issue]." *Travelers Ins. Co.*, 14 F.3d at 119 (alteration in original) (quotation omitted).

The Court will address below each of the grounds for defendants' motion to dismiss in turn.

### 1. Timeliness

The Comprehensive Motor Vehicle Insurance Reparations Act, commonly known as "No-Fault," was enacted in order to provide a mechanism for prompt payment to accident victims for out-of-pocket medical costs. *See Hosp. for Joint Diseases v. Travelers Prop. Cas. Ins. Co.,* 9 N.Y.3d 312, 317, 849

N.Y.S.2d 473 (2007) ("New York's no-fault automobile insurance system is designed to ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists. In furtherance of these goals, the Superintendent of Insurance has adopted regulations implementing the No-Fault Law (Insurance Law art. 51), including circumscribed time frames for claim procedures.") (quotations and citation omitted).

Pursuant to New York's No-Fault Insurance Laws, an insurer is required to pay or deny a claim within thirty days of its submission. N.Y. Ins. Law § 5106(a). This rule is commonly referred to as the "30-Day Rule." If an insurer fails to pay or deny a claim within this thirty day period, the insurer waives its right to almost all defenses it would otherwise have to paying the claim, including billing fraud based upon lack of medical necessity or excessive fees.[2] *See Presbyterian Hosp. v. Md. Cas. Co.*, 90 N.Y.2d 274, 660 N.Y.S.2d 536 (1997).

Defendants argue that plaintiff's failure to deny the claims at issue within the thirty day period prescribed by the statute and regulations precludes them from affirmatively raising those claims here. (Defendants' Memorandum of Law, at 12.) As discussed below, the Court disagrees and concludes that the 30-Day Rule does not foreclose affirmative lawsuits for fraud or unjust enrichment against medical providers.

This precise issue was addressed most recently by Judge Glasser in *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 04-CV-5045 (ILG), 2008 U.S. Dist. LEXIS 71156 (E.D.N.Y. Sept. 3, 2008). In *CPT Med. Servs.*, the court concluded that the time limitation imposed by the 30-Day Rule was not intended to prevent subsequent lawsuits against medical providers based on an alleged scheme to defraud. *Id.* at 19-22. In particular, the Court deferred to the interpretation of the No-Fault Insurance Laws by the Department of Insurance ("DOI"). Relying on the DOI's opinion, the court, in *CPT Med. Servs.,* held that "State Farm is not precluded from bringing an action alleging fraud and unjust enrichment merely because it did not discover the defendants' alleged fraud within the thirty day claims period." 2008 U.S. Dist. LEXIS 71156, at *22.

In reaching this holding, Judge Glasser agreed with prior federal decisions in this Circuit which have similarly held that the 30-Day Rule is inapplicable to these affirmative lawsuits for fraud. *See*, *e.g.*, *State Farm Mutual Auto. Ins. Co. v. Grafman*, 04-cv-2609 (NG), 2007 U.S. Dist. LEXIS 96751, at *39-40 (E.D.N.Y. May 22, 2007) (finding that the 30-Day Rule does not bar affirmative claims of fraud by an insurer who previously paid on the claims and noting the following: "Although the New York courts have made it clear that an insurer is barred from raising an untimely *defense* of fraud, it does not follow that the courts would also preclude an insurer

---

[2] A narrow exception to the 30-Day Rule was identified by the Court of Appeals in situations where insurers are asserting a "no coverage" defense, including that there was no policy in force or that there was no accident. *See Cent. Gen. Hosp. v. Chubb Group of Ins. Cos.*, 90 N.Y.2d 195, 199, 659 N.Y.S.2d 246 (1997). A second narrow exception has developed in connection with "fraudulent corporate formation." *State Farm Mut. Auto. Ins. Co. v. Mallela,* 4 N.Y.3d 313, 794 N.Y.S.2d 700, 703 (2005).

who has timely paid a claim from subsequently asserting an affirmative claim of fraud.") (emphasis in original); *State Farm Mut. Auto. Ins. Co. v. Kalika*, 04-cv-4631 (CBA), 2006 U.S. Dist. LEXIS 97454, at *15 (E.D.N.Y. Mar. 16, 2006) (Report & Recommendation of Magistrate Judge Pollack adopted by Judge Amon on March 31, 2006) (finding that "where an insurer complies with the 30-day Rule and makes a timely payment, there appears to be no policy which would seek to protect an insured or health care provider who has submitted false claims as part of a scheme to defraud the insurer" and noting the following: "The policy of ensuring prompt payment or denial of claims in exchange for a reduction in the number of litigation claims filed is not served by allowing fraudulent schemes to be perpetrated without recourse to the insurer seeking reimbursement for claims wrongly paid as a result of fraud and deceit. Although defendants contend that the 30-day Rule simply requires that an insurer raise such an issue within the 30 day period through a proper denial of the fraudulent claim, often the nature of fraud is such that it is not easily discovered within that short period of time. Indeed, the New York Legislature, in providing a six year statute of limitations for fraud actions, has recognized the difficulty often encountered in unearthing a fraudulent scheme."); *State Farm Mut. Auto. Ins. Co. v. Mallela*, 175 F. Supp. 2d 401, 421 (E.D.N.Y. 2001) ("That the court would preclude an insurer from raising most defenses, including most frauds, as a defense to a claim where the defense is not timely raised in order to ensure timely payment of claims does not imply that it would preclude an insurer from bringing suit at some later point, after the insured received his benefits on the basis of actionably fraudulent behavior.").

This Court agrees with these prior decisions and holds, under New York law, that the 30-Day Rule set forth in Section 5106 does not preclude subsequent lawsuits for fraud or unjust enrichment by an insurer against a medical provider. First, and foremost, the language of Section 5106 does not address affirmative lawsuits in any way; rather, it simply requires insurers to either pay or deny no-fault claims within 30 days of their receipt. *See* N.Y. Ins. Law § 5106(a) ("Payments of first party benefits and additional first party benefits shall be made as the loss is incurred. Such benefits are overdue if not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained."). Thus, although the statutory language compels prompt payment, there is nothing in the statutory language or framework that seeks to eviscerate an insurer's legal ability to recoup such payment in a subsequent lawsuit if it later determines that a medical provider engaged in fraud in connection with the claim.

Second, as noted above, that statutory interpretation is consistent with the position of the New York State Department of Insurance. In particular, in an opinion issued on November 29, 2000, the Department of Insurance specifically addressed this precise situation:

> The New York No-Fault reparations law, more specifically through the payment of benefits provisions of *N.Y. Ins. Law § 5106* (McKinney 2000), is in no way intended and should not serve as a bar to subsequent actions by an insurer for the recovery of fraudulently

8

obtained benefits from a claimant, where such action is authorized under the auspices of any statute or under common law.

*Legal Opinion of State of New York, Insurance Department*, dated November 29, 2000, at 2.[3] The Department of Insurance also explained the rationale behind this statutory interpretation:

> The payment of fraudulently obtained No-Fault benefits, without available recourse, serves to undermine and damage the integrity of the No-Fault system, which was created as a social reparations system for the benefit of consumers. To conclude that the No-Fault statute bars the availability of other legal remedies, where the payment of benefits were secured through fraudulent means, renders the public as the ultimate victim of such fraud, in the form of higher premiums based upon the resultant increased costs arising from the fraudulent actions.

*Id*. at 2 (citation omitted). The Department of Insurance also noted that "[t]here is nothing in the legislative history or case law interpretations of the statute or in Insurance Department regulations, opinions or interpretations of the statute that supports the argument that the statute bars such actions." *Id.* In fact, such an absolute bar would be inconsistent with the language of other statutory provisions of New York Insurance Law, such as the one that requires insurers to have fraud detection plans which include "coordination with other units of an insurer for the investigation and *initiation of civil actions* based upon information received by or through the special investigation unit." N.Y. Ins. Law § 409(c)(4) (emphasis supplied).

As the New York Court of Appeals has stated and as Judge Glasser noted in *CPT Medical Services*, regulations by the Department of Insurance interpreting provisions of the insurance law are generally entitled to great deference:

> The Superintendent of Insurance is vested by Insurance Law § 301 with the power to prescribe regulations interpreting the provisions of the Insurance Law, provided only that his regulations are not inconsistent with some specific provision of the law. By that section, he is granted broad power to interpret, clarify, and implement the legislative policy and his interpretation, if not irrational or unreasonable, will be upheld in deference to his special competence and expertise with respect to the insurance industry, unless it runs counter to the clear wording of a statutory

---

[3] Although defendants question whether this opinion is "real" because of their inability to locate it on the Department of Insurance website (Defendants' Memorandum of Law in Reply, at 7), plaintiff has attached a copy of the opinion as Exhibit 2 to its Opposition Memorandum of Law.

9

provision.

*N.Y. Pub. Interest Research Group, Inc.* v. *N.Y. State Dep't of Ins.*, 66 N.Y.2d 444, 448, 497 N.Y.S.2d 645 (1985) (quotations and citatins omitted); *accord Ostrer v. Schenck*, 41 N.Y.2d 782, 785, 396 N.Y.S.2d 335, 364 (1977). However, this informal opinion, which is not a regulation and primarily involves a question of interpreting legislative intent from the statutory language, is not entitled to the great deference afforded under this New York case authority. *See In re Union Indem. Ins. Co. of New York,* 92 N.Y.2d 107, 115, 677 N.Y.S.2d 228 (1998). Nevertheless, this Court believes that the DOI opinion and the rationale contained therein – which is consistent with the statutory provisions of New York insurance laws, as well as the state lower court opinions discussed *infra* – is instructive and an accurate predictor of how the Court of Appeals will resolve this issue.

Finally, although the New York State Court of Appeals has not decided this precise issue, the only two state court cases (of which this Court is aware) that have directly examined this question have concluded that, notwithstanding the 30-Day Rule regarding defenses, an affirmative claim is available to an insurer to recover money paid on fraudulent claims. *See Carnegie Hill Orthopedic Servs. P.C. v. Geico Ins. Co.*, 19 Misc. 3d 1111A, 862 N.Y.S.2d 813 (Sup. Ct. Nassau County 2008) (precluding defendant from defending a claim for payment based on billing fraud because of the 30-Day Rule, but allowing it to bring a counterclaim based on that same billing fraud); *Progressive Northeastern Ins. Co. v. Advanced Diagnostic and Treatment Med. P.C.*, 229 N.Y.L.J. 18 col. 2 (Sup. Ct. N.Y. County Aug. 2. 2001) (holding that affirmative claims to recover payment under fraud and unjust enrichment theories are not barred by Ins. Law § 5106 because "[t]his section is clearly intended to provide for the prompt payment of covered No-Fault expenses due to a claimant. It would not appear to apply where, as here, the insurer has already paid those benefits and discovers fraud on the part of a health care provider, who has submitted fraudulent claims.").

Moreover, the Appellate Term's decision in *Fair Price Med. Supply Corp. v. Travelers Indem. Co.*, 803 N.Y.S.2d 337 (App. Term 2005), which was affirmed by the Appellate Division (which was then affirmed by the New York Court of Appeals), specifically noted that, although a defense based on a provider's fraudulent scheme to obtain no-fault benefits was precluded under the 30-Day Rule by a defendant's untimely denial, it would not foreclose an affirmative lawsuit for fraud:

> We note in passing that an insurer precluded from defending a claim based on provider fraud is not without remedy; after paying such a claim, the insurer, for example, may have an action to recover benefits paid under a theory of fraud or unjust enrichment.

*Fair Price Med. Supply Corp. v. Travelers Indem. Co.*, 803 N.Y.S.2d 337, 340 (N.Y. App. Term 2005), *aff'd*, 42 A.D.3d 277, 837 N.Y.S.2d 350 (N.Y. App. Div. 2007), *aff'd*, 10 N.Y.3d 556, 860 N.Y.S.2d 471 (2008). Neither the Appellate Division nor the Court of Appeals disclaimed, or disagreed with, this statement by the Appellate Term in affirming its holding.

Defendants have not cited, nor is this Court aware of, any New York state cases which have held otherwise. Given these lower state court decisions, which are consistent with the statutory language and the DOI opinion, this Court concludes that these non-binding court decisions should be given proper regard and that, in this particular circumstance, such decisions reflect the best indicator of how the New York Court of Appeals will decide this issue. *See McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir. 1997) ("'Where the high court has not spoken, the best indicators of how it would decide are often the decisions of lower [New York] courts.'") (alteration in original) (quoting *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 850 (2d Cir. 1992)).

Although defendants attempt to undermine this support in New York law for State Farm's position, the Court finds their position unpersuasive. Defendants suggest that the above-referenced federal decisions (including *CPT Medical Services, Grafman, Kalika*, and *Mallela*) have repeatedly ignored state court cases dealing with this issue. Specifically, defendants point to the Court of Appeals' decision in *Fair Price,* which defendants claim conclusively answers the question before this Court. *Fair Price*, however, is silent as to whether affirmative actions by insurers may be brought to recover payment on fraudulent insurance claims. Defendants argue that *Fair Price* "reconfirmed that the 30-Day Rule applies to billing and provider fraud," (Defendants' Memorandum of Law, at 9), but defendants have overlooked the critical difference between the instant case and *Fair Price* – namely, the question is not whether the 30-Day Rule applies to a *defense of fraud* (an issue clearly resolved by *Fair Price*), but rather whether it bars *affirmative claims* brought after the insurer pays the claim to recover the money that was fraudulently obtained (which *Fair Price* never addressed).

Defendants contend that this is a distinction with no legal significance, but the Court disagrees. In particular, the Court finds unpersuasive defendants' attempt to trace the path of the *Fair Price* decisions in state court to argue that they necessarily require a rejection of State Farm's position here. Specifically, in arguing that federal courts have ignored state law, defendants attempt to draw a parallel between the progression of *Allstate Insurance Company v. Valley Physical Medicine and Rehabilitation, P.C.*, 475 F. Supp. 2d 213 (E.D.N.Y. 2007) ("*Valley I*") and *Allstate Insurance Company v. Valley Physical Medicine & Rehabilitation, P.C.*, 555 F. Supp. 2d 335 (E.D.N.Y. 2008) ("*Valley II*") in federal court and *Fair Price* in state court, despite the fact that the *Valley* cases were affirmative fraud claims while *Fair Price* dealt with a defense of fraud. Defendants contend that the New York State Court of Appeals' disagreement with *Valley I* is clear evidence that New York State law would preclude the claims before this Court. As summarized below, this Court finds this argument unavailing, as the subject of the disagreement between these cases – whether a defense of fraud falls within an exception to the 30-Day Rule – is different than the issue being raised before this Court, and defendants entirely ignore the distinction that exists under New York law between raising a defense and an affirmative claim, as has been found by the DOI and lower New York state courts discussed *supra*.[4]

---

[4] Similarly, the Court finds the 1865 New York Court of Appeals case and more recent First Department case cited by plaintiff – which held

11

In *Valley I*, the court (a) granted a motion to dismiss affirmative claims of fraud and unjust enrichment as to bills for services that were medically unnecessary, excessive, or conducted by unlicensed individuals as it found these to be barred because they were not raised within the 30-day period, and (b) denied a motion to dismiss fraud and unjust enrichment claims as to bills for services not provided on the grounds that such bills are analogous to bills for which there was no accident and, therefore, no coverage, which are excluded from the 30-Day Rule. In reaching the latter decision, the court in *Valley I* cited to the Appellate Term's dissenting opinion in *Fair Price* under the belief that the Court of Appeals would adopt its reasoning on appeal. The Appellate Department and the Court of Appeals, however, affirmed the Appellate Term's opinion in *Fair Price*, explicitly finding that billing fraud *defenses* would not be excluded from the 30-Day Rule. The opinions of the Appellate Department and the Court of Appeals did not touch on the viability of affirmative claims in general and, as noted above, were silent on the Appellate Term's statement that "an insurer precluded from defending a claim based on provider fraud is not without remedy; after paying such a claim, the insurer, for example, may have an action to recover benefits paid under a theory of fraud or unjust enrichment." *Fair Price Medical Supply Corp. v. Travelers Indem. Co.*, 803 N.Y.S.2d 337, 340 (N.Y. App. Term 2005).

While *Fair Price* was on appeal, the insurer plaintiff in *Valley I* moved to have the court reconsider its decision to dismiss the affirmative claims relating to excessive billing and bills for medically unnecessary services, and such motion for reconsideration was granted in *Valley II*. Specifically, the court reconsidered the claims for excessive billing and medically unnecessary services and found that these should not have been dismissed: "§ 5106 does not preclude an insurer who fails to timely deny a claim from maintaining an affirmative cause of action for fraud (or unjust enrichment) based on allegations of fraudulent billing." *Valley II* at 339. This finding rested in part on two unpublished cases, which this Court has cited above. *See State Farm Mt. Auto Ins. Co. v. Kalika*, No. 04-cv-4631, 2006

---

that a statute which precluded a corporation from interposing the defense of usury in any action also precluded a separate lawsuit – to be inapposite to the circumstances in the instant case. *See* Defendants' Reply Brief, at 3 (citing, *inter alia, Rosa v. Butterfield*, 33 N.Y. 665 (1865); *Intima-Eighteen, Inc. v. A.H. Schreiber Co., Inc.*, 172 A.D.2d 456, 457, 568 N.Y.S.2d 802 (N.Y. App. Div. 1991)). Although in the context of the usury statute the Court of Appeals concluded that "such a construction would defeat all the beneficial aims of the act" (*Rosa*, 33 N.Y. at 668), no such conclusion can be reached here. The primary purpose underlying the No-Fault Insurance Laws – namely, assuring that claimants obtain "prompt payment of first-party benefits without regard to fault and without expense to them," *Dermatossian v. New York City Transit Authority,* 67 N.Y.2d 219, 225, 501 N.Y.S.2d 784 (1986), is not defeated by allowing insurers to bring separate lawsuits for fraud against medical providers after such payments are made. To the contrary, stripping insurers of this remedy would – as the Court of Appeals concluded in a different (but analogous) context in *Dermatossian* regarding whether paying a no-fault claim could be deemed an admission in a claimant's subsequent action for damages – "unquestionably frustrate the very purpose of the No-Fault Law by discouraging insurers from making prompt and voluntary payment of claims." *Id.; see also Kalika,* 2006 U.S. Dist. LEXIS 97454, at *11-*16 (citing *Dermatossian* and concluding that barring affirmative suits does not serve the policies underlying No-Fault Insurance Laws).

12

U.S. Dist. LEXIS 97454, at *10 (E.D.N.Y. Mar. 16, 2006); *Progressive Northeastern Ins. Co. v. Advanced Diagnostic and Treatment Med. P.C.*, 229 N.Y.L.J. 18 col. 2 (Sup. Ct. N.Y. County Aug. 2, 2001). The court in *Valley II* also pointed to *Carnegie Hill Orthopedic Servs. P.C. v. Geico Ins. Co.*, 19 Misc. 3d 1111A, 862 N.Y.S.2d 813 (Sup. Ct. Nassau County 2008), in which the court found that defenses grounded in fraud were precluded if not made within the 30-day period, but affirmative causes of action for fraud were not. The state court in *Carnegie Hill* noted, as this Court has, the language in the Appellate Term decision in *Fair Price* which supports this conclusion. In particular, the court in *Carnegie Hall* explained:

> The theories of recovery based on these allegations sound in fraud and unjust enrichment, and are attacked by the plaintiffs as being without support under New York common law. However, the Appellate Term endorsed both such theories in *Fair Price*, and its determination was affirmed by the Appellate Division without any comment on this suggested remedy. For this reason summary judgment dismissing the counterclaims is denied.

*Id.* at 5-6. Contrary to defendants' argument, *Valley II* only reconsidered affirmative claims for fraud and unjust enrichment on the basis that there is a distinction between such affirmative claims and defenses. Thus, even though *Valley I* was incorrect (as confirmed by *Fair Price*) to allow the claims relating to fraudulent billing to proceed on the basis that they are excluded from the 30-Day Rule, *Valley II* correctly concluded that such claims still survive because they were not asserted as defenses, but rather as affirmative claims, and no New York court has held to the contrary.[5]

In sum, the complaint in the instant case by State Farm seeks to recover the $1 million paid to the defendant doctors in connection with an alleged fraudulent billing scheme. This is not a case in which plaintiff is raising fraud as a defense to payment of claims to a claimant once the thirty day period has elapsed. Therefore, there is nothing in the language of the 30-Day Rule that bars plaintiff under New York State law from bringing this affirmative lawsuit against defendants for fraud and unjust enrichment. Accordingly, defendants' motion to dismiss the claims on timeliness grounds based on the 30-Day Rule is denied.

2. Waiver of Fraud Claims

Defendants also argue that plaintiff's

---

[5] In its papers and at oral argument, defendants argue that, because State Farm filed an *amicus* brief with the Court of Appeals in *Fair Price* containing some of the same arguments in support of its position in *Fair Price* that fraudulent billing *defenses* should be exempted from the 30-day rule, the Court of Appeals rejection of that position necessarily requires rejection of State Farm's position here regarding its ability to bring a *separate lawsuit* for fraud. *See* Defendants' Memorandum of Law in Reply, at 7 ("The Court of Appeals rejected the same arguments now proffered by State Farm, and this Court should do the same."). However, the rejection of State Farm's position regarding fraud defenses does not, as a matter of law or logic, mandate the same result here regarding the ability to bring a separate lawsuit. In fact, as noted *supra*, the Appellate Term opinion in *Fair Price*, which was affirmed, drew precisely that distinction.

13

fraud claim should be dismissed because State Farm waived its right to bring such a claim when it reached a settlement agreement with defendants regarding some of the disputed claims. Defendants further argue that "State Farm has also waived its right to assert fraud claims concerning all of the other claims pending in state court litigations and arbitrations." (Defendants' Memorandum of Law, at 21.) Defendants do not provide sufficient information upon which to base a finding that plaintiff's claim is barred. Defendants do not contend that any or all claims at issue in this case are pending in state court litigations or arbitrations or were the subject of a settlement agreement. Further, it is entirely unclear why plaintiff's decision to settle some individual claims would waive its right to pursue the claims at hand on other individual claims. Defendants point to nothing to support that contention. "A party may properly raise a defense of *res judicata* or collateral estoppel on a motion to dismiss pursuant to Rule 12(b)(6) only where the basis for that defense is set forth on the face of the complaint or established by the public record. Neither exception applies here. . . they cannot prevail without providing the Court with the [] awards that they contend preclude the claims." *State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.*, 2007-cv-0051 (ENV)(MDG), 2007 U.S. Dist. LEXIS 74459 (E.D.N.Y. Oct. 4, 2007) (citations omitted). Based on the information before the Court, there is no basis for dismissing plaintiff's claim of fraud on this ground.

3. Unjust Enrichment

Defendants argue that plaintiff's unjust enrichment claim is insufficiently pled under Rule 8(a) and fails to state a cause of action under Rule 12(b)(6) because "[p]laintiff admits that each claim is predicated on the existence of a valid written contract – the insurance policies" and "[w]here there is a valid express agreement between the parties that explicitly covers the subject matter for which the implied agreement is sought, [] a court will not infer the existence of an implied contract." (Defendants' Memorandum of Law, at 20.) (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 905 (2d Cir. 1997)). Plaintiff argues that the claim for unjust enrichment is entirely unrelated to the insurance agreement underlying the claims at issue.

In order to state a claim for unjust enrichment, "plaintiff must establish 1) that the defendant benefitted; 2) at plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). (citing *Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 20 (2d Cir. 1983)). The complaint adequately pleads all of these elements pursuant to Rule 8(a), so the only issue is whether the insurance policies make equitable relief inapplicable. An unjust enrichment claim may only be asserted in the absence of an agreement between the parties that governs the subject matter at issue – be it oral, written or implied-in-fact. *See, e.g. Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J. Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (citing *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 807 N.Y.S.2d 583 (2005)). On the face of the complaint, there is no indication that plaintiff's claims fall within the scope of its insurance policies, and courts have declined to dismiss unjust enrichment claims in virtually identical circumstances. *See, e.g. State Farm Mut. Auto. Ins. Co. v. Kalika*, 04-cv-4631 (CB), 2006 U.S. Dist. LEXIS 97454, at *36-37 (E.D.N.Y. Mar. 16, 2006); *State Farm Mut. Auto Ins. Co. v. CPT Med. Servs., P.C.*, 04-cv-5045 (ILG), 2008

U.S. Dist. LEXIS 71156, at *53 (E.D.N.Y. Sept. 5, 2008). For these reasons, this Court declines to dismiss plaintiff's unjust enrichment claim at this stage.

4. Sufficiency of Pleading Fraud

The defendants also argue that the complaint fails to contain sufficient allegations to support a fraud claim. However, as set forth below, the Court disagrees and concludes that the allegations are sufficient to survive a motion to dismiss under Rules 9(b) and 12(b)(6).

In order to state a claim for fraud under New York law, a plaintiff is required to allege the following five elements: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006); *see also Cohen v. Houseconnect Realty Corp.*, 289 A.D.2d 277, 278, 734 N.Y.S.2d 205 (N.Y. App. Div. 2001).

As noted *supra*, Rule 9(b) requires all averments of fraud and the circumstances constituting fraud to be stated with particularity. "[I]n order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "But because we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,] . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent. The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner* at 290-291 (internal quotations and citations omitted).

As outlined below, the Court finds that plaintiff has adequately satisfied the pleading requirements for a claim of fraud and there is no basis to dismiss the claim at the motion to dismiss stage.

The complaint sets forth in detail the cateogries of insurance claims that defendant allegedly knowingly submitted in an attempt to inflate the payments owed by plaintiff. For example, the complaint alleges that defendants used billing codes which "misrepresent[ed] and exaggerate[d] the level of services provided in order to inflate the charges" and unbundled billing codes for electromyography tests "to inflate the charges." (Compl. ¶ 2.) The complaint also alleges that defendants knew that these bills were misrepresentations. (*Id*.) Specifically, the complaint alleges that defendants submitted all consultation bills under the billing code 99244, which indicates that the doctor spent sixty minutes with the patient and/or family "to address a presenting problem of moderate to high severity." (Compl. ¶ 17.) The complaint alleges that these were inflated charges. (Compl. ¶ 17.) In addition, the complaint alleges that defendants submitted these 99244 bills,

15

seeking payment in the amount of $230.09, when the maximum charge permitted for such services is $181.34. (Compl. ¶ 17.) The complaint further alleges that defendants submitted bills "unbundled" in order to inflate charges. This means that instead of submitting a bill for $408.64, the maximum amount for an EMG performed on at least 5 muscles in each of 4 limbs, defendants submitted two separate charges for $241.50, the maximum amount for EMGs performed on at least 5 muscles in each of 2 limbs. (Compl. ¶ 39.) The complaint lists various other examples of fraudulent billing, including billing for tests that are not medically necessary and the fact that the same procedures are followed for all patients without regard for their individual circumstances. (Compl. ¶¶ 25-27, 37, 43, 49.) Attached to the complaint is a "Representative Sample of Fraudulent Charges Submitted by JMLPC" and a list of examples of "SSEPs Performed Where EMG/NCVs Performed," which the complaint alleges to be redundant. (Compl. Exh. B-C.) Clearly, therefore, the complaint alleges the fraudulent statements, the speaker, and why the statements were allegedly fraudulent. The time and place of each statements is not clearly stated for each fraudulent claim, however. The purpose of Rule 9(b) is to give defendants fair notice of the fraud alleged against them. While the complaint lists some but not all of the individual claims that it alleges fall within the above-described categories (and it is reasonable to assume that plaintiff could not list all of them without some discovery on the issue), Rule 9(b) does not require that each specific misrepresentation be identified where an ongoing fraudulent scheme is alleged. *See Lehman Bros. Comm. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, No. 94-cv-8301 (JFK), 1995 U.S. Dist. LEXIS 15185, at *2-3 (S.D.N.Y. Oct. 16, 1995) (finding that "[w]here the misstatements are alleged to have occurred over a period of time . . . the pleadings are not required 'to provide the date and time of every communication.'" (quoting *Pollack v. Laidlaw Holdings, Inc.*, No. 90-cv-5788 (DLC), 1995 U.S. Dist. LEXIS 5909, at *26 (S.D.N.Y. May 3, 1995) (holding that it would be "impossible" for plaintiffs to specify the date and time of every communication over a five-year period)). Exhibits 2 and 3 to the complaint list many specific claims that plaintiff alleges were fraudulent. That level of specificity is sufficient to survive a motion to dismiss.

In addition, the complaint does "allege facts that give rise to a strong inference of fraudulent intent" as is required. *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir. 1995). Such a "strong inference" "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Taking the allegations of the complaint as true for purposes of this motion only and drawing all reasonable inferences in plaintiff's favor, plaintiff has alleged circumstantial evidence of conscious misbehavior or recklessness. *See, e.g., Ouaknine v. MacFarlane*, 897 F.2d 75, 81 (2d Cir. 1990) (finding allegations of breach of contract sufficient to support scienter where "[i]t is difficult to imagine how such events could have occurred if the defendants who controlled them had not actually intended to defraud").

Finally, plaintiffs clearly allege that they relied upon and were damaged by the false representations. For instance, the complaint

specifically states that defendants "wrongfully obtained" $1,000,000 from State Farm through the submission of the above-described fraudulent claims. (Compl. ¶ 1.)

Accepting the factual allegations in the complaint, the plaintiff has stated a claim for fraud against defendants that meets the pleading requirements of Rules 9(b) and 12(b)(6) and, thus, the motion to dismiss on such grounds is denied.

### 5. Abstention

With respect to abstention, defendants first argue that the *Brillhart* abstention doctrine applies to the case before this Court and counsels that the Court should abstain from hearing this case. (Defendants' Memorandum of Law, at 21-23) (citing *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942)). The *Brillhart* abstention doctrine allows a district court in its discretion to abstain from rendering a declaratory judgment when "'the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in the state court.'" *Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 338 (2d Cir. 2005) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)). The Supreme Court in *Wilton v. Seven Falls Co.*, 525 U.S. 277 (1995) held that *Brillhart*, not the more stringent requirements of *Colorado River* abstention (explained *infra*) applies to declaratory judgments, but it is well established that the flexible *Brillhart* standard does not apply to such declaratory judgment cases if the suit involves claims for damages as well as a request for declaratory relief. *See, e.g., Village of Westfield v. Welch's*, 170 F.3d 116, n.5 (2d Cir. 1999) ("We note that the Supreme Court held in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L. Ed. 2d 214 (1995), that a discretionary standard, and not the *Colorado River* exceptional circumstances standard, governs a district court's decision to stay a declaratory judgment action on grounds of a parallel state court proceeding. *Wilton* does not apply here . . . [as] the federal action did not seek purely declaratory relief."); *Government Emples. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 n.6 (9th Cir. 1998) (*en banc*) (noting that a "district court is without discretion to remand or decline" claims for monetary relief appended to declaratory judgment actions). As plaintiff in this case seeks damages on its fraud and unjust enrichment claims in addition to declaratory relief, *Brillhart* abstention does not apply.

Second, defendants ask this Court to exercise *Colorado River* abstention. Generally, abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," and *Colorado River* abstention, in particular, "can be justified . . . only in . . . exceptional circumstances." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). The Second Circuit has noted that such "exceptional circumstances" exist only where "there is concurrent state-court litigation whose resolution could result in comprehensive disposition of litigation." *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 775 (2d Cir. 1996) (citing *Colorado River*, 424 U.S. at 817) (internal quotation marks omitted). Defendants do not identify the exact nature of the state litigation they claim to be parallel to this case, but even assuming *arguendo* that it is parallel, abstention is not appropriate here for the reasons set forth below.

This Court finds that "the narrow and specific limits prescribed by . . . abstention

doctrine" do not favor abstention under the circumstances in this case. *See Woodford v. Community Action Agency of Greene County, Inc.*, 239 F.3d 517, 523 (2d Cir. 2001) (internal quotation marks omitted). To determine whether *Colorado River* abstention is appropriate, the district court must weigh six factors, "with the 'balance heavily weighted in favor of the exercise of jurisdiction.'" *Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 76 (2d Cir. 1996) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)). The factors include:

> (1) the assumption of jurisdiction by either court over any res or property, (2) the inconvenience of the federal forum, (3) the avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained, (5) whether state or federal law supplies the rule of decision, and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*Id.* This Court has considered each factor and, in light of the heavy weight of factors in favor of the exercise of jurisdiction, finds that "considerations of wise judicial administration" counsel against the application of an "extraordinary and narrow exception" to this Court's duty to adjudicate a controversy properly before it, especially at this early juncture of the case. *See id.* at 76 (quoting *Colorado River*, 424 U.S. at 817). The first factor is inapplicable as there is no *res* or property at stake. As for the second factor, there is no indication that the federal forum is in any way more inconvenient than the state forum and defendants do not argue otherwise. The third factor argues against abstention in that the actions defendants have brought against plaintiff in state court appear to be individual litigations of claims to determine the medical necessity of the tests and consultations performed and/or billed. A declaratory judgment in this case might prevent the need for resolution of the pending individual cases. As for the fourth factor, while at least some of the state claims were filed before this case commenced, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. Defendants have not provided the status of the state court claims nor have they argued that those cases are further along than the case before this Court. With respect to the fifth factor, "although the presence of federal issues strongly advises exercising federal jurisdiction, the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." *Vill. of Westfield*, 170 F.3d at 124. The state law issues before this Court are not particularly complex and defendants have provided no reason why this forum would be an inappropriate place in which to decide them. The last factor appears to be neutral. There is no reason to think that the state court would not adequately protect plaintiff's rights, but that in itself is not sufficient reason to abstain.

For the above-stated reasons, this Court declines to abstain from hearing the current action.

IV. CONCLUSION

For the foregoing reasons, defendants'

motion to dismiss is denied in its entirety.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 12, 2008
Central Islip, New York

\* \* \*

The attorney for plaintiff State Farm is Barry Levy, Esq., of Rivkin Radler, LLP, 926 Rexcorp Plaza, Uniondale, New York, 11556-0111.  The attorneys for the defendants Dr. Liguori and JMLPC are Harold Levy, Esq. and Richard Quadrino, Esq., of Quadrino Schwartz, 666 Old Country Road, 9th Floor, Garden City, New York 11590.